**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:09-CR-62-TLS |
| | ) | CASE NO.: 1:12-CV-205-TLS |
| CHARLES DIES | ) | |

**OPINION AND ORDER**

The Defendant, Charles Dies, pleaded guilty to conspiring to distribute cocaine, 21
U.S.C. § 846, and possessing with intent to distribute cocaine, 21 U.S.C. § 841, and was
sentenced to 156 months of imprisonment in accordance with a Plea Agreement containing an
agreed term of imprisonment. This matter is before the Court on a Motion Under 28 U.S.C. §
2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 355],
filed by the Defendant on April 2, 2012, and an Amended/Supplemental Petition filed on May 7,
2012 [ECF No. 365]. The Defendant argues that his counsel rendered ineffective assistance,
thereby depriving him of his Sixth Amendment right to counsel. For the reasons set forth in this
Opinion and Order, the Court will deny the Defendant's Motions. In addition, the Court will not
issue a certificate of appealability.

**PROCEDURAL BACKGROUND**

**A.     The Charges**

On May 28, 2009, the Government filed a Criminal Complaint against the Defendant and
eight other individuals, charging them with a conspiracy to distribute controlled substances in
violation of 21 U.S.C. § 846, and with separate gun offenses in violation of 18 U.S.C. §
924(c)(1) and/or § 922(g)(1). On June 24, 2009, the grand jury returned a nine-count Indictment,

in which the Defendant was charged in three counts. The Indictment also contained a forfeiture allegation for cash, firearms, and ammunition.

Many of the Defendants pled guilty to the charges contained in the Indictment and several of the Co-defendants agreed to cooperate against the Defendant. On January 26, 2011, the Government filed a seven-count Superseding Indictment against the Defendant and the two remaining Co-defendants. The Superseding Indictment charged the Defendant with conspiring to distribute 5 or more kilograms of cocaine in violation of 21 U.S.C. § 846 (Count 1), possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 3), and two counts of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Counts 2 and 4). The Superseding Indictment also contained a forfeiture allegation.

**B.      The Plea Agreement**

A written Plea Agreement between the Government and the Defendant was filed with the Court on March 28, 2011. According to the Plea Agreement, the Defendant agreed to enter a plea of guilty to Counts 1 and 3 of the Superseding Indictment, in return for the dismissal of Counts 2 and 4, the gun charges. The Government and the Defendant also agreed to a term, not binding on the Court, providing that the Defendant was entitled to the appropriate reductions for acceptance of responsibility. The Plea Agreement contained the following language regarding the Defendant's term of imprisonment:

> I am aware that had I been convicted of either or both of the § 924(c) offenses, I would have been subject to a 5 year term of imprisonment that would have run consecutive to the drug counts to which I have agreed to plead guilty. However, the government has agreed to a dismissal of the § 924(c) counts above, and I hereby

> agree to any variance that would result in a total sentence of 156 months imprisonment. The government and I agree that I should receive a sentence of 156 months imprisonment on Counts 1 and 3. This agreement that I should receive a sentence of 156 months is a binding agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(c).

(Plea Agreement ¶ 8.e, ECF No. 206.) The next paragraph contained the following waiver:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed, I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence or the restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section § 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

(Plea Agreement ¶ 8.f.) In paragraph 12, the Defendant declared that he was offering his "plea of guilty freely and voluntarily and of [his] own accord," that "no promises ha[d] been made to [him] other than those contained in this [plea] agreement," and he was not "threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement."

The Court referred the matter to Magistrate Judge Roger Cosbey to conduct a plea hearing to determine whether the Defendant was competent to enter a plea, the Defendant knowingly and voluntarily wished to enter a guilty plea, the Defendant understood the charges against him, and there existed a factual basis for the charges. On March 30, 2011, the Magistrate Judge conducted a change of plea hearing. The Defendant took an oath and the Court made detailed inquiry into his competence to plead, the voluntariness of his plea, and his understanding regarding specific terms of the Plea Agreement. The Court found that the

Defendant was fully competent and capable of entering an informed plea, that the Defendant was aware of the charges and the consequences of the plea, and that the plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

Among the provisions of the Plea Agreement that were the subject of the Magistrate Judge's inquiry were those related to his possible sentence. The Magistrate Judge also discussed the appellate waiver, specifically the fact that the Defendant was agreeing to waive his ability to appeal his conviction and sentence, and he was also giving up his ability to collaterally attack his conviction and sentence or the manner in which it was imposed through habeas corpus. The Court asked the Defendant whether he understood that he was giving up his right to claim ineffective assistance of counsel unless that ineffectiveness related directly to the negotiation of his appellate waiver. The Defendant affirmed this understanding. He reiterated as well that no one had forced him to plead, threatened him, or made any promises that were not part of the Plea Agreement to get him to plead guilty, and that he was pleading guilty of his own free will.

After the hearing, the Magistrate Judge issued Findings and Recommendation, finding that the Defendant understood the nature of the charges against him, understood the rights he was giving up by pleading guilty, understood the possible sentences he could receive, was pleading guilty knowingly and voluntarily, was competent to plead guilty, understood his answers could be used against him later in a prosecution for perjury or false statement, and that there was a factual basis for the plea. The Magistrate Judge recommended that the Court accept the Defendant's plea of guilty. No party filed objections to the Findings and Recommendation, and the Court, on April 18, accepted the recommended disposition, adjudged the Defendant

4

guilty of Counts 1 and 3 of the Superceding Indictment, and set the matter for sentencing.

**C.      Sentencing**

The Defendant's PSR recommended that his total offense level be set at 33, based in part on a proposed 2 level enhancement under U.S.S.G. § 2D1.1 for possession of a dangerous weapon, and a further 2 level increase under U.S.S.G. § 3B1.1(c) for the Defendant's role in the offense as an organizer, leader, manager or supervisor of criminal activity. The PSR further noted that the almost $30,000 in cash found in Dies' bedroom was "the subject of forfeiture." (PSR ¶¶ 30, 33, ECF No. 265). The Defendant objected to the enhancements for the dangerous weapon and his role in the offense.

At sentencing, the Court acknowledged that the parties' agreement that the Defendant be sentenced to a term of imprisonment of 156 months was the type of agreement specified in Federal Rule of Criminal Procedure 11(c)(1)(C), and that the Court could only accept this term of the plea agreement if it found that the agreed sentence was within the applicable guideline range or that it departed for justifiable reasons. The Court's acceptance of the Plea Agreement thus necessitated that it first determine the correct Guideline range. Accordingly, resolution of the Defendant's objections, and their impact on the offense level and guideline range, was essential to the Court's consideration of the binding term and whether to accept it. After, the Court heard testimony from the Defendant and argument from counsel regarding the Defendant's objections, the Court overruled the Defendant's objection to the dangerous weapons enhancement, concluding that the Defendant was using the gun for personal protection and that his need for protection was connected to his drug trafficking. However, the Court found

insufficient evidence that the Defendant had supervised or managed other Co-defendants, and thus sustained the Defendant's objection the enhancement for his role in the offense. Based on the Court's rulings, the Guideline range was 108 to 135 months of imprisonment.

Next, the Court heard argument from counsel concerning the reasons the Court should accept the Plea Agreement, specifically, the dismissal of the two gun charges and the agreed 156-month term of imprisonment. Both the Government and the Defendant presented argument in favor of accepting the binding terms of the Plea Agreement and sentencing the Defendant to 156 months of imprisonment. The Court then accepted the Plea Agreement and asked the Defendant if he understood that the judgment would reflect the dismissal of Counts 2 and 4, and that he would now be sentenced to a term of 156 months of imprisonment. The Defendant responded: "Yes, I do, Your Honor." (Sent. Hr'g Tr. 34–25, ECF No. 343.) The Court then gave the Defendant an opportunity to address the Court. The Court asked the Defendant whether he agreed with everything his attorney had said and done on his behalf. The Defendant expressed that he was displeased with the length of his sentence, stating that he thought it "a little excessive." (Sent. Hr'g Tr. 37, ECF No. 343.) The Court reminded the Defendant that had he gone to trial and been found guilty, he would have faced more time. The Defendant responded: "I understand that too, Your Honor, but I'm just a poor, black man." (*Id.*)

### D.       Direct Appeal

The Defendant appealed his sentence and received new counsel. On appeal, the Defendant challenged whether the Court erred when it ordered $29,959 in cash, and a gun and ammunition forfeited because the Government had not moved for forfeiture. Counsel argued that

the appellate waiver in the Plea Agreement did not cover forfeiture. The Government waived any reliance on the appeal waiver as to the limited issue of forfeiture, and conceded that it had not moved for forfeiture. The Court of Appeals remanded the matter to the Court with instructions to strike the forfeiture from the judgment, and affirmed the judgment in all other respects. (Notice of Issuance of Mandate and Order, ECF No. 364.)

**E.      Habeas Motion**

On April 2, 2012, the Defendant filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, which included a brief in support, and various exhibits. In his Motion for habeas relief, the Defendant asserts that his counsel was ineffective in the following areas: (1) during the investigatory stage; (2) when he failed to file a motion to suppress the Government's wiretap evidence; (3) during the plea negotiation phase (4) during sentencing; and (5) how he handled the Government's forfeiture allegation during and after the plea negotiation phase. He asserts that his appellate counsel was ineffective when he raised only the issue of forfeiture on direct appeal. The Defendant argued that, but for counsel's ineffective assistance, he would have proceeded to trial. On May 7, the Defendant supplemented his Motion with an additional 24 pages of briefing and exhibits. He stated two additional issues for consideration: (1) whether trial counsel was "ineffective prior to and during sentencing in acquiescing to the Government's presentation of a written Plea Agreement rejected by the [Defendant]; and (2) whether "the Court erred in its use and acceptance, for sentencing purposes, of an earlier, rejected written Plea Agreement to form the basis for its imposed [156-]month sentence." (Am/Supp. Pet. 1, ECF No. 365.) In this supplemental submission, the Defendant

claims that the Plea Agreement filed with the Court is not the agreement he signed. He contends

that he signed an entirely different agreement that did not contain a binding term, and that he was

materially prejudiced by his counsel's failure to identify the correct plea agreement when he was

sentenced to 156 months "upon the false assumption that he had agreed to same." (Am/Supp.

Pet. 3.) He attaches two different plea agreements, marked as Exhibits A and C, and claims that

he signed only the version represented by Exhibit C, even though Exhibit A was erroneously

used in court instead.

On May 9, 2012, the Government filed its Response in Opposition to Section 2255

Petition [ECF No. 366]. The Government asserted that the Defendant was not entitled to any

relief under § 2255 because his claims were waived by the explicit terms of his Plea Agreement,

and that his claims regarding the incorrect Plea Agreement are factually inaccurate.

On July 16, 2012, the Defendant submitted a Reply [ECF No. 367]. The Defendant

contends that the waiver does not preclude his claims because his attorney was ineffective during

the plea negotiation phase of his representation.


**ANALYSIS**

The Government argues that the Defendant waived his right to collaterally attack his

sentence as part of the Plea Agreement that he voluntarily entered with the Government.

A plea agreement is a type of contract subject to contract law principles tempered by

limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d

634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are

clear and unambiguous and the record shows that the defendant knowingly and voluntarily

entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).

Here, the Defendant's waivers of his right to appeal and his right to collaterally attack his conviction and sentence, "including but not limited to, a proceeding under Title 28, United States Code, Section 2255" (Plea Agreement ¶ 8.f), are express and unambiguous. They cite the exact provision of the United States Code the Defendant is attempting to use to challenge his sentence. The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones*, 167 F.3d at 1144–45). The Defendant does not allege that the Court relied on impermissible factors, such as his race, in selecting his sentence, or that he was sentenced in excess of the statutory maximum for the crime he committed. Thus the Court turns, first, to a discussion whether the plea agreement was involuntary and, second, to whether any of his claims are for ineffective assistance of counsel in connection with the negotiation of the Plea Agreement.

## A.    Voluntariness of the Plea Agreement

In determining whether a defendant knowingly and voluntarily entered into a plea

agreement, a court examines the content and the language of the plea agreement and the plea colloquy between the defendant and the judge. *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997); *see also United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007) (observing that the district court must inform the defendant of an appellate waiver during the Rule 11 colloquy). When a sentencing court engages a defendant in a detailed colloquy pursuant to Federal Rule of Criminal Procedure 11 and discusses with a defendant his rights and the consequences of his guilty plea, the testimony of the defendant at that hearing is accorded a "presumption of verity." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). *Cf. United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) (stating that a "defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, . . . faces 'a heavy burden of persuasion'") (quoting *Ellison*, 835 F.2d at 693). "[A] careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary," *United States v. Schuh,* 289 F.3d 968, 975 (7th Cir. 2002), and courts may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver, *United States v. Jemison,* 237 F.3d 911, 917 (7th Cir. 2001).

The Defendant argues that he could not have knowingly and voluntarily entered the Plea Agreement that is on the docket because it is not the version of the Plea Agreement that he actually signed. He claims that the Plea Agreement he signed, which he attaches as Exhibit C to his submissions, did not include an agreed term of imprisonment for 156 months, a forfeiture provision, or a waiver of the right to request documentation. The Defendant's argument is flatly contradicted by the record, including his statements during the change of plea hearing. First, the Plea Agreement attached as Exhibit A, which the Defendant claims was used in Court despite his

rejection of it, is not the agreement that was submitted to the Court. The Plea Agreement that was filed with the Court is identical to the Defendant's Exhibit C, which is the version he claims to have signed. Contrary to the Defendant's assertion, that Agreement (like the one designated as Exhibit A) clearly contains the binding provision for 156 months imprisonment. (Plea Agreement ¶ 8.e, ECF No. 206; Am. Supp. Pet. Ex. C ¶ 8.e, ECF No. 365.) Moreover, the plea hearing transcript fully rebuts the Defendant's assertion that he was advised for the first time at sentencing that the Plea Agreement he signed contained the binding term of imprisonment. Even the Defendant appears to abandon the claim that the agreement he signed did not contain a binding term of imprisonment. He argues in Reply in Support of Motion for Post-Conviction Relief that he did not understand the significance of the binding term.

The Defendant points to two grounds for his alleged confusion. First, he claims that the Plea Agreement contained an ambiguous set of clauses regarding his sentence. Second, he maintains that his counsel led him to believe that it was possible to receive a sentence at the low end of the guideline range of 87 to 108 months despite the inclusion in his Plea Agreement for a term of 156 months. Neither of these arguments is supported by the record.

With respect to the provisions regarding the sentence he would receive, the Defendant argues that the following two provisions created confusion and ambiguity:

> I understand that under the U.S. Sentencing Guidelines, the Court, in light of an investigation by the United States Probation Office, will determine the applicable sentencing guideline range, and that the Court will determine all matters, whether factual or legal, relevant to the application of the U.S. Sentencing Guidelines. I understand that the U.S. Sentencing Guidelines are advisory only, and that the specific sentence to be imposed upon me will be determined by the judge after a consideration of a pre-sentence investigation report, input from counsel for myself and the government, federal sentencing statutes, and the U.S. Sentencing Guidelines.

(Plea Agreement ¶ 7.) The Plea Agreement also contained the following term:

11

> I am aware that had I been convicted of either or both of the § 924(c) offenses, I would have been subject to a 5 year term of imprisonment that would have run consecutive to the drug counts to which I have agreed to plead guilty. However, the government has agreed to a dismissal of the § 924(c) counts above, and I hereby agree to any variance that would result in a total sentence of 156 months imprisonment. The government and I agree that I should receive a sentence of 156 months imprisonment on Counts 1 and 3. This agreement that I should receive a sentence of 156 months is a binding agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

(Plea Agreement ¶ 8.e.) These terms are not inconsistent with each other. They simply express the reality that a binding plea agreement may stipulate that "a specific sentence or sentencing range is the appropriate disposition of the case." Fed. R. Crim. P. 11(c)(1)(C). Paragraph 8.e contained this type of agreement. Rule 11(c)(1)(C) makes the parties' recommended sentence binding on the court "once the court accepts the plea agreement," but the governing policy statement confirms that the court's acceptance is itself based on the Guidelines. *See* U.S.S.G. § 6B1.2 (requiring a court to evaluate a Rule 11(c)(1)(C) agreement in the context of the defendant's applicable guideline range). The commentary to § 6B1.2 advises that a court may accept an 11(c)(1)(C) agreement "only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence is outside the applicable guideline range for justifiable reasons." Thus, although Rule 11(c)(1)(C) permits the defendant and the government to agree that a specific sentence is appropriate, "that agreement does not discharge the district court's independent obligation to exercise its discretion" and requires that it "give due consideration to the relevant sentencing range." *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011). Paragraph 7 thus accurately sets forth that the Court would determine all matters relevant to the application of the Guideline range, that the range was advisory, and that the Court would ultimately determine the sentence.

In addition to the unambiguous language regarding the agreed term set forth in his written Plea Agreement, the Magistrate Judge informed the Defendant in open court during his change of plea hearing that his Plea Agreement contained a binding term for 156 months imprisonment:

> Mr. Dies, some of the terms of your agreement with the Government may be binding upon the Court. That is, they would become part of the judgment in this case, if the District Court accepts both your plea of guilty, and your plea agreement with the Government.
>
> In particular, paragraph 8D on page four states that the Government will dismiss Count Two and Four of the superseding indictment at the time of sentencing.
>
> Additionally, paragraph 8E states that you are aware that you had been—that you had been convicted of either or both of the 924(c) offenses. Let me state that again.
>
> Additionally paragraph 8E states that you are aware that had you been convicted of either or both of the 924(c) offenses, you would have been subject to a five-year term of imprisonment that would have run consecutively to the drug counts to which you have agreed to plead guilty.
>
> However, the Government has agreed to dismiss—to the dismissal of the 924(c) counts above, and you are hereby—and you hereby agree to any variance that will result in a total sentence of 156 months imprisonment.

(Plea Hr'g Tr. 14–15.) This exchange then took place:

> THE COURT: The Government and you, therefore, agree that you should receive a sentence of 156 months imprisonment on Counts One and Three. You understand that?
>
> THE DEFENDANT: Yes, I do, sir.
>
> THE COURT: Do you understand that if, at the time of sentencing, the District Court chooses to accept the plea agreement, the terms in paragraph 8D and E are binding on the Court, and the terms will be included in the judgment of this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anything about these terms that you do not understand or do not agree with?
>
> THE DEFENDANT: Hmmm, no, sir.

(*Id.* 15.) The Magistrate Judge then informed the Defendant that if the Court did not accept the dismissal of Counts 2 and 4, and the 156-month term of imprisonment, the Court would give the Defendant an opportunity to withdraw his guilty plea. The Defendant could then withdraw or go

13

forward with sentencing with the understanding that he could receive a more severe sentence. Later in the proceeding, the Magistrate Judge set forth the maximum penalties that could be assessed for the offenses to which the Defendant was pleading guilty, explained that the Court would determine his sentence using a combination of advisory sentencing guidelines, possible authorized variances from those guidelines, and other statutory sentencing factors, and advised that the Court would not be able to determine the advisory guideline sentence until after the presentence investigation report (PSR) was completed and the parties had an opportunity to address it. After this reiteration of what was essentially paragraph 7 of his Plea Agreement, the Magistrate Judge explained that the Court would examine the sentencing factors set forth in 18 U.S.C. § 3553(a), and asked whether the Defendant understood "that *notwithstanding what I just told you, you and the Government have agreed that you should receive a sentence of 156 months imprisonment*?" (Plea Hr'g Tr. 20 (emphasis added).) The Defendant stated that he understood.

The Defendant's claim that he was confused is further contradicted by the following exchange, which took place at the plea hearing after the Defendant confirmed that he had an opportunity to read and discuss the Plea Agreement before he signed it:

> THE COURT: You understand the terms of the plea agreement?
> THE DEFENDANT: Yes, I do, sir.
> THE COURT: Is there anything in this plea agreement you do not understand?
> THE DEFENDANT: No, sir.
> THE COURT: Mr. Dies, has anyone made any promise or assurance that is not in the plea agreement to persuade you to accept the agreement?
> THE DEFENDANT: No, sir.
> THE COURT: Are there any side agreements that are not stated in the plea agreement?
> THE DEFENDANT: No, sir.
> THE COURT: Has anyone threatened you in any way to persuade you to accept this agreement?
> THE DEFENDANT: No, sir.

14

(Plea Hr'g Tr. 13.) A defendant's statements made during a plea colloquy are generally accorded a presumption of verity. *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000). The Defendant's statements during the plea colloquy concerning his understanding of the substantive terms of the Plea Agreement, including the agreed term of imprisonment and the appellate waiver, as well as his statements that no one had forced him to plead, threatened him, or made any promises that were not part of the Plea Agreement to get him to plead guilty, and that he was pleading guilty of his own free will, all support the conclusion that he entered a knowing and voluntary waiver of his right to collaterally attack the sentence.

With this knowing and voluntary waiver, the Defendant is barred from collaterally attacking his sentence, save for any claims that relate to the negotiation of the plea agreement. The Defendant's claims that trial and appellate counsel rendered ineffective assistance with respect to a pre-trial investigation, a suppression motion, his sentence, and his appeal have nothing to do with the negotiation of the waiver. *See, e.g., Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000) (stating ineffective assistance of counsel claims that relate to anything other than plea negotiation, for example, those related to counsel's performance at sentencing, are barred by an enforceable waiver); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (finding that because the defendant's ineffective assistance of counsel claim related only to counsel's performance with respect to sentencing, it had nothing to do with the issue of a deficient negotiation of the waiver and was barred by a waiver). The forfeiture issue raised by the Defendant was addressed and remedied on direct appeal.

**B.      Claims of Ineffective Assistance Related to Negotiation of the Plea Agreement**

The Defendant raises claims that relates directly to the effectiveness of counsel during

plea negotiations, and the Court will analyze these specific claims on their merits.

Claims of ineffective assistance of counsel are governed by the two–pronged test set forth

in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of

counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell

below an objective standard of reasonableness" and were "outside the wide range of

professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993)

(quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943,

948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001).

The second *Strickland* prong requires the Defendant to show prejudice, which entails

showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Benefiel v. Davis*, 357

F.3d 655, 661 (7th Cir. 2004). "To demonstrate prejudice arising from a guilty plea allegedly

rendered involuntary by counsel's deficient performance, a petitioner must establish that

counsel's performance was objectively unreasonable and that, but for counsel's erroneous

advice, he would not have pleaded guilty." *Bridgeman*, 229 F.3d 589, 592 (7th Cir. 2000) (citing

*United States v. Martinez*, 169 F.3d 1049, 1052–53 (7th Cir. 1999)). If the Court finds either the

performance or the prejudice component of the ineffective assistance claim deficient under the

*Strickland* test, then there is no need to consider the sufficiency of the other component. *United*

*States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

The Defendant's primary arguments related to counsel's performance during plea

agreement negotiations are that his counsel did not explain what post-conviction proceedings meant, and that his counsel led him to believe that it was possible to receive a sentence at the low end of the guideline range despite his binding agreement with the Government. The Defendant claims that if his counsel had properly communicated to him "the fact that his guilty plea was binding on the Court as to the one-hundred and fifty-six (156) month term of incarceration, and that a Rule 11(c)(1)(C) plea cannot be altered by a subsequent determination that a Defendant's guideline range is lower than the agreed term, [he] would have insisted on proceeding to trial." (Pet.'s Reply 12, ECF No. 367.)

The Defendant's first claim of ineffective fails because he not offered any evidence that, had counsel explained the meaning of post-conviction relief, the outcome of the plea process would have been different. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (noting that with respect to plea bargains, *Strickland* prejudice prong requires the defendant to show that counsel's constitutionally ineffective performance affected the outcome of the plea process); *Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (holding that a habeas petition did not establish the kind of prejudice necessary to satisfy the second half of the *Strickand* test where he did not allege that, had counsel informed his correctly about his parole eligibility date, he would not have pleaded guilty and would have insisted on going to trial). The Defendant has not asserted that he placed any particular importance or emphasis on the ability to pursue post-conviction relief when he was deciding whether or not to plead guilty. He has not alleged that, had counsel explained the meaning of a § 2255 post-conviction motion, and the consequences of waiving the right to file such a motion, he would have elected to proceed to trial. As no prejudice resulted from counsel's alleged failure, the Defendant has not established a violation of his rights under the Sixth

17

Amendment.

For the Defendant's second claim of ineffectiveness, he asserts that his counsel never discussed with him the consequences of entering a Rule 11(c)(1)(C) agreement, and that he was led to believe that he could be sentenced to the low end of the Guideline range. The Defendant's affidavit does not designate a time period for these statements. Even if the Court assumes that counsel made such representations before the guilty plea, and thus during the plea negotiation process, a defendant cannot claim he relied on the inaccurate advice of his counsel if the trial judge explains to him otherwise and the defendant states that he understands. "[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992). In a case decided by the Seventh Circuit, *Hutchings v. United States*, 618 F.3d 693 (7th Cir. 2010), the defendant argued that he would not have pled guilty had his attorney fully explained to him during plea negotiations that a Rule 35 motion to reduce his sentenced was not guaranteed. The court found that the defendant did not provide probative, objective evidence that his counsel's advice impacted his plea decision and thus prejudiced him. *Id.* at 698. The defendant stated under oath during his plea colloquy that there were no promises made to him to induce him to plead guilty. *Id.* at 699.  Yet, in his habeas motion, he claimed that his attorney promised him a Rule 35 sentence reduction, and that he did not mention it during the colloquy because the deal was secret so the government and the court could appear to be tough on crime. *Id.* The court found the defendant's "after-the fact explanation wholly insufficient to override the

verity that presumptively attaches to a defendant's statements when entering a guilty plea." *Id.*
(citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004)). It reasoned:

> Justice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the defendant] to renege on his representation under oath to the district court that there were no promises made to him to induce his guilty plea. Absent a showing that his attorney personally directed him to hide the truth from the judge, we simply cannot accept [the defendant]'s explanation for lying to the court.

*Id.*

Similarly, here, even if the Court assumes that counsel indicated to the Defendant that he could receive a sentence below the agreed term of 156 months, the Defendant cannot establish that this advice prejudiced him given his acknowledgment in his Rule 11 colloquy that he understood he would be sentenced to 156 months of imprisonment. The Defendant's statements at his change of plea hearing directly contradict his statement in support of his § 2255 Motion that he instead believed the Court would depart from the agreed sentence, and that binding did not really mean binding. The Defendant's claim also contradicts his statement that there were no agreements outside those contained in the Plea Agreement that induced him to plead guilty. The Defendant's only explanation for misinforming the Magistrate Judge when he said he understood that, upon acceptance of his Plea Agreement, he would be sentenced to 156 months of imprisonment, and that there was nothing about the binding term that he did not understand or agree with is that "it would be inappropriate to hold Dies (an uneducated layman) to appreciate the legal significance and meaning of a Rule 11 (c)(1)(C) Plea Agreement." (Pet.'s Reply 16 n.7, ECF No. 367.) This, as in *Hutchings*, is "wholly insufficient to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea." *Hutchings*, 618 F.3d at 699 (citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004)). "Judges need not

let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *cf. United States v. Scott*, 929 F.2d 313, 315 (7th Cir. 1991) ("To allow [the defendant] to withdraw his plea because of secret expectations that he harbored in the face of his directly contradictory sworn testimony would undermine the strong societal interest in the finality of guilty pleas."). Moreover, the Defendant was never left to his own understanding of the legal implications of his agreement. The significance of the binding term was clearly set out for the Defendant's benefit during the plea colloquy. The Defendant cannot be heard to say that he did not understand that the term in his Plea Agreement was binding when the Magistrate Judge fully explained the term and the Defendant advised that he understood it. Having assured the Court that he understood that he would be sentenced to 156 months, the Defendant has failed to make the requisite showing that his attorney's deficient advice about his sentence was a decisive factor in his decision to plead guilty.[1]

The Court will briefly address the Defendant's argument that his sentencing exposure provides objective proof that he never would have agreed to a term of 156 months. The Defendant argues that he was facing less than 156 months imprisonment if he proceeded to trial because he would have prevailed on the gun charges, and thus he would have never agreed to a binding term for that amount. The Defendant's argument is flawed. First, the Defendant admits

---

[1] Even the Defendant's later comments at his sentencing hearing express an understanding that, if the Court accepted the Plea Agreement, he would be sentenced to 156 months. Although his statements also express displeasure with the length of the sentence, they do not suggest surprise. Any false hope the Defendant claims he had from the fact that objections were made to the PSR are unrelated to the negotiation of the Plea Agreement.

in his affidavit that his counsel advised him during plea negotiations that the Defendant was erroneous in his belief that he would prevail at trial on the gun charges. Thus, he was well aware of the potential that he could be found guilty of the gun charges and face a mandatory minimum sentence of 5 years for the conviction when he accepted the Plea Agreement. Moreover, counsel's advice was objectively reasonable. A firearm was located on the night stand next to the Defendant's bed. Cash was recovered from the Defendant's bedroom and cocaine was recovered from the attached garage. The Defendant was a supplier of cocaine. The Court found, for purposes of sentencing, that the Defendant possessed a dangerous weapon in connection with a drug trafficking offense. Likewise, applying the factors that are useful in distinguishing between mere possession and possession in furtherance of a drug conspiracy, it was not unreasonable to advise the Defendant that a jury would have likely found him guilty. *See United States v. Seymour*, 519 F.3d 700, 715 (7th Cir. 2008) (listing factors). The Defendant's argument that he would not have accepted a term of 156 months because he believed his actual exposure was less than 156 months if he had proceeded to trial is not convincing.

Arguing from a slightly different approach, the Defendant contends that it was ineffective for counsel to negotiate a plea agreement containing an agreed term of 156 months when the Defendants' Guideline range would only be 108 to 135 months imprisonment. Against, the Defendant's argument ignores an important variable: the fact that the range of 108 to 135 months did not include the gun charge, which was only dismissed in exchange for his guilty plea on Counts 1 and 3.

During the sentencing hearing, the Government emphasized:

As far as the binding term that's in the plea agreement, this was the best offer that was going to be given to Mr. Dies, and Mr. Campbell worked very hard and did a lot

21

of things to secure that plea agreement. So the Government was absolutely not going to offer anything below what we offered Mr. Dies in this case, because he was the supplier in Mr. Hutchins's conspiracy.

(Sent. Hr'g Tr. 38, ECF No. 343.) The Government is under no obligation to offer a plea agreement at all, *see United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000), and there is no evidence that "more effective" counsel could have secured a plea agreement that would have resulted in a sentence of less than 156 months imprisonment. Defense counsel, in advocating for the Court to accept the 156-binding term at sentencing, stated:

> There was a lot of time and energy and discussion spent, both between myself and the Government, and with Mr. Dies in reviewing the various factors that enter into possibilities for Mr. Dies either by plea or going to trial, including the statutory mandatory minimums [for the gun charges] that Mr. Geller referred to.
> The risk assessment, that obviously is a risk assessment both on the part of the Government and on the part of Mr. Dies. And so when we factored all those various considerations, we came up with a number that, although Mr. Dies might not be happy or satisfied with it, but he has been willing to plead guilty based upon that term.

(Sent. Hr'g Tr. 28.)

All of the objective evidence points to the conclusion that the Defendant was unhappy with the sentencing choices he faced, that his counsel secured a plea agreement for a binding term of imprisonment of 156 months in exchange for the dismissal of gun charges that carried mandatory minimum sentences of 60 months imprisonment, that the Defendant accepted and signed the Plea Agreement, that the Court thoroughly explained the consequences of the binding term, that the Defendant understood the consequences of the binding term, that the Court accepted the Plea Agreement and sentenced the Defendant to 156 months imprisonment, that the Government dismissed the gun charges, and that the Defendant is still dissatisfied with his sentence. The Defendant has failed to show through probative, objective evidence that, absent

his counsel's alleged failures, he would not have pleaded guilty and would have proceeded to trial.

**C.      Evidentiary Hearing**

The Defendant has requested a hearing to be held in this matter. An evidentiary hearing need not be held for every § 2255 motion. "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted). Here, the Court has concluded that the Defendant's arguments are either waived or are unsuccessful on their merits. Because the Court finds that the Defendant has not raised a cognizable claim in his § 2255 Motion, he is not entitled to a hearing. *See, e.g. Hutchins*, 618 F.3d at 700 (finding that despite trial counsel's election not to refute the defendant's allegations that he provided ineffective assistance, an evidentiary hearing was not necessary because the record before the district court conclusively showed that the defendant was not prejudiced under *Strickland*).

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules

Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation

marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where the district court has

rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is

straightforward: The petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A

defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v.

Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the

underlying constitutional claim, not the resolution of that debate"). "Where a plain procedural

bar is present and the district court is correct to invoke it to dispose of the case, a reasonable

jurist could not conclude either that the district court erred in dismissing the petition or that the

petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a

certificate of appealability should issue. Additional argument is not necessary here because no

reasonable jurist could conclude that the Defendant did not knowingly and voluntarily plead

guilty pursuant to a Plea Agreement that contained an express waiver of the right to collaterally

attack his conviction or sentence. In addition, no reasonable jurist could conclude that the

Court's assessment of the Sixth Amendment claim was debatable or wrong regarding the

negotiation of a plea agreement containing a binding term of imprisonment. The Court will not

24

issue the Defendant a certificate of appealability.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 355] and the Defendant's Amended/Supplemental Petition [ECF No. 365]. The Court declines to issue a certificate of appealability.

SO ORDERED on February 21, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT